**DE LONG CORPORATION,**
**Plaintiff,**
**v.**
**Joseph E. LUCAS, Defendant.**

United States District Court
S. D. New York.
Feb. 24, 1956.

IRVING R. KAUFMAN, District Judge.

In this action for injunctive relief and the recovery of $5,000,000 damages, plaintiff seeks by this motion an order compelling the defendant to answer certain questions which the defendant refused to answer upon his deposition, and an order requiring the defendant to produce and permit the inspection and copying of certain documents dealing with the engineering and sale of docks, platforms and equipment for marine and oil field use including equipment making use of self-elevating mechanisms.

In a well considered opinion in this action, filed January 27, 1956, 139 F. Supp. 127, Judge McGohey denied plaintiff's application for a temporary injunction. The facts are fully discussed in that opinion and will therefore be mentioned only briefly here so that the issues on this motion may be put in their proper perspective.

The plaintiff, DeLong Corporation (hereinafter DeLong), was and is engaged in the business of engineering, constructing and installing docks, barges and other over-water structures which, by means of built-in jacks, are self-elevating.

To the layman, plaintiff's type of work might be clarified by a reference to its most recent project, the construction of the "Texas Tower", an advanced radar warning platform in the Atlantic Ocean, 110 miles from Cape Cod.

In March 1950, after several years' experience as a mining engineer, the defendant, Joseph E. Lucas (hereinafter Lucas), entered the plaintiff's employ. In addition to salary and expenses, Lucas was to receive a fixed percentage of DeLong's net profits on certain specified contracts. In February 1953, a dispute arose over the computation of net profits. Lucas was demanding an accounting but without success. DeLong, on the other hand, was demanding that Lucas assign his then pending application for a jacking mechanism, which he had evolved while in DeLong's employ. In April 1953, DeLong started a suit against Lu-

Clifford Forster, New York City, of counsel, Edward J. Ennis, New York City, for plaintiff.

John P. Walsh, Thomas A. Harnett, New York City, of counsel, Watters & Donovan, New York City, for defendant.

cas. This was discontinued pursuant to a written agreement executed June 10, 1953.

Under this agreement of settlement, DeLong was to pay Lucas approximately $135,000 and at a later date the further sum of $50,000. Upon payment of the latter sum, Lucas was to assign his pending patent application and any improvements thereon. The two payments and the assignment have been made. Lucas further agreed "for a period of two years after the signing of this agreement not to compete or assist anyone to compete with [DeLong] in any business related to [Lucas'] former employment by [DeLong] consisting of engineering and sales of docks, barges, platforms and similar equipment for marine and/or oil field use including equipment making use of self-elevating mechanisms, pneumatic, mechanical, manual or otherwise any place in the world"; and "for a period of two years after the signing of this agreement not to divulge to anyone any trade secrets or confidential information concerning the business of [DeLong] learned by [Lucas] during his employment." This latter clause was necessary because in the course of Lucas' employment he had access to DeLong's files and had allegedly gained secret and valuable information concerning DeLong's jacking devices.

The present complaint was filed November 12, 1955. Two days previous DeLong had failed in its bid for a contract with the Navy to construct and install a number of advance warning radar stations at sea similar to the initial Texas Tower. The successful bidder was Morrison-Knudsen Company, Inc., of Boise, Idaho (hereinafter Morrison-Knudsen). The bids were received some time in September 1955, in response to invitations issued in July, 1955.

It is DeLong's contention that for several months during the "no competition" period which ended on June 10, 1955, Lucas, by certain activities, was himself competing and in addition was assisting Morrison-Knudsen to compete with De-Long. It is also claimed that three applications for patents which Lucas filed in 1954 are improvements on the patent assigned to DeLong under the settlement agreement and that failure to assign these violates that agreement. In this action, therefore, in addition to damages, plaintiff is seeking to enjoin the defendant from carrying out any arrangements commenced prior to June 10, 1955, for competing with plaintiff or assisting others to compete with plaintiff in the type of work covered by the settlement agreement.

It is conceded that after settlement of the suit on June 10, 1953, Lucas applied himself to the study of new designs, equipment and methods of construction and operation for reducing the cost of marine oil field operations and that between May and August 1954 he filed applications for three patents. In September 1954, he sought financial assistance for his studies from Morrison-Knudsen. Indeed, in April 1955, Morrison-Knudsen by letter agreed to finance Lucas' studies and experiments in return for a renewable option to purchase his three patents. On June 10, 1955, the "no competition" period of two years expired, followed by the Navy's invitation for bids, their submission, and the award to Morrison-Knudsen as above stated. Lucas concedes that throughout the "no competition" period he was actively "preparing to compete" with DeLong as soon as the period expired after June 10, 1955. He insists, however, that he has faithfully kept that agreement by not soliciting major oil companies to use his so-called Lucas system during that period.

Judge McGohey pointed out in his opinion that whether Lucas has adhered to the terms of the agreement depends upon an interpretation of the intention of the parties with respect to the "no competition" clause. Judge McGohey framed the issues by stating that on the one hand, DeLong's attorneys assert that "no competition" means that Lucas could not, even in the strictest secrecy, make any studies or prepare any plans with respect to self-elevating mechanisms or structures and that during the two years'

period he was required to completely put this entire matter out of his mind. On the other hand, Lucas contends that the "no competition" provision merely required him not to bid against DeLong or assist others to do so on contracts to be let during the two year period. A third possible construction by DeLong might be that Lucas could think in secrecy, but could not aid or solicit aid from potential competitors of DeLong. Without deciding the issue, Judge McGohey stated that the determination of whose version of the "no competition" clause is correct must await a trial. While the Judge leaned towards the defendant's interpretation, he said: "A trial may develop evidence to support DeLong's contention but, absent such evidence, I cannot accept his construction as correct."

Plaintiff now seeks a direction by this Court requiring the defendant to answer in an oral deposition questions relating to activities post the start of this lawsuit, which questions it insists relate to the alleged violation of the agreement during the two year "no competition" period. The defendant objects to this on the ground that the plaintiff is really seeking to inquire into the secrets of the defendant's business activities after the expiration of the agreement, and that this is irrelevant and oppressive since both the plaintiff and the defendant are engaged now in construction of mechanisms highly competitive with one another. In short, the defendant urges that to permit this examination will cause the revelation of trade secrets, secret processes, etc., which he says would be devastating to his business. The plaintiff also seeks the production and inspection of the patent applications referred to above, and work papers and sketches of any apparatus on which patent applications are pending, or other similar work on which patent is to be sought. In addition, plaintiff seeks the discovery of correspondence with Morrison-Knudsen, and other . companies with which defendant worked during this period, and certain other papers and memoranda not specifically described.

■ The maxim that the Federal Rules on deposition and discovery are to be liberally construed is so well established that it bears little discussion. However, it is also true that the Rules recognize that there will be occasions when this liberality must be tempered with restraint. The protective order provisions of Rule 30(b), 28 U.S.C., specifically enumerate the instances in which the court's discretion should be exercised in circumscribing the examination sought or the production of documents desired.

Being mindful of the bristling contentions by both parties and the uncertainty which exists, as evidenced by Judge McGohey's opinion, over the interpretation of the "no competition" clause of the agreement in issue, the court must be careful that in permitting the examination to go forward it shall place specific limitations upon the scope of the examination, so that in view of the highly competitive nature of the businesses of the parties, irreparable injury will not result to the defendant in the event that plaintiff fails ultimately to sustain its claim at the trial of this action.

In balancing the respective rights in deposition and discovery proceedings, the court must weigh on the one hand the right of the plaintiff to examine with respect to everything relevant, and to have the production for copying of documents which are relevant and for which the plaintiff has established good cause, and on the other hand, the right of the defendant to be protected against oppression, and as justice demands, Rule 30(b), in his trade secrets. With these conflicting equities in mind, I hold as follows:

■ (1) That portion of the discovery motion which seeks the production of the patent applications, work papers and sketches of any apparatus on which patent application is pending, or other similar work on which patents are sought, will be refused. In this instance, as I have stated before, the injury which can flow to the defendant in the event of a failure on the part of the plaintiff to

sustain its case would be irreparable, for the plaintiff would have learned of the defendant's new processes and would thus be in a position to adopt these new methods. It is to be noted that the patent laws protect the secrecy of patent applications upon which a patent has not as yet issued. 35 U.S.C. § 122. In view of the foregoing, I believe that it would be best to leave the question of the propriety of production of these patent applications and other papers relevant to these applications to the trial judge who can, after the evidence unfolds, decide whether there is relevancy to the papers.[1] The trial judge can then grant a brief adjournment and permit inspection if he sees fit. It seems to me that to grant the discovery of these documents at this juncture of the case would be to give the plaintiff more than his action seeks.

(2) I do believe that the correspondence with Morrison-Knudsen, Continental Copper & Steel Industries, Inc. and Designers and Planners, Inc. is relevant on the question of whether the defendant actually competed with the plaintiff. I therefore will direct the production of this correspondence. However, the production will be limited by the restriction incorporated in number (1) so that correspondence which might reveal secret processes or developments need not be produced.

 (3) The request for the blanket production of all other correspondence, memoranda and documents is denied because it lacks specificity and is too sweeping. The better practice would be for the plaintiff to ascertain by oral examination the identity of the papers he seeks, and then to show "good cause" for the production of these specified documents.

(4) The defendant will be directed to answer questions relating to activities post the start of this lawsuit which relate to allegations of a violation of the agreement during the two year period. In short, the plaintiff will be permitted to elicit answers which establish a continuation of a violation of the "no competition" clause after the commencement of the suit, the seed of which was planted and began to sprout during the period of "no competition". It is clear that in this injunction suit, unless the plaintiff establishes that the violations of the agreement are still continuing, there will be no need to enjoin anything. Here again, the defendant will be protected by the limitations set forth in number (1) above, and the defendant will not be required to reveal secret processes subsequently incorporated in the patent applications referred to in number (1).

 It is clear that Rule 30(b) of the Federal Rules of Civil Procedure permits the court to make "any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." Moore points out, 4 Moore's Federal Practice 2041 (2d Ed. 1950): "There are situations which may justify a protective order postponing discovery as to certain issues until other issues have been decided." Cf. Columbia Pictures Corp. v. Rogers, D.C. S.D.W.Va.1949, 81 F.Supp. 580. Rule 30(b) empowers the court in the interest of justice to control the degree of disclosure of information by a weighing of the respective rights, that is, on the one hand the right of the plaintiff to a liberal examination and on the other, the right of the defendant to a protective order. Equity and fairness have prompted the foregoing disposition. It is the fervent hope of this Court that

---

1. Although there is a surface relevancy in light of plaintiff's allegations that these are not new inventions but improvements over the assigned patent, the defendant contends that under patent law, and according to the intent of the parties, Lucas was not required to assign such improvements if he evolved them after he left DeLong's employ. If defendant is upheld in his contention at the trial, inspection of these applications to see whether the designs represent a new invention or an improvement will be unnecessary.

the parties will approach compliance with this decision in a spirit of cooperation and thus spare themselves from future time-consuming applications to the court for directions and clarification. Settle order.