**MICROWAVE RESEARCH CORPORATION,**

v.

**SANDERS ASSOCIATES, INC.**

Civ. A. No. 83–2158–N.

United States District Court, D. Massachusetts.

June 30, 1986.

Leo V. Boyle, Warren F. Fitzgerald, Meehan, Boyle & Cohen, Boston, Mass., for plaintiffs.

John M. Harrington, Jr., William F. McCarthy, John P. Dennis, Ropes & Gray, Boston, Mass., for defendants.

MEMORANDUM AND ORDER ON PLAINTIFF, MICROWAVE RESEARCH CORPORATION'S, MOTION FOR AN ORDER COMPELLING DEFENDANT SANDERS ASSOCIATES, INC., TO PRODUCE DOCUMENTS AND THINGS (# 67)

ROBERT B. COLLINGS, United States Magistrate.

The question presented by Plaintiff, Microwave Research Corporation's, Motion For An Order Compelling Defendant, Sanders Associates, Inc., To Produce Documents And Things (# 67) is in what circumstances can a corporate plaintiff, which alleges misappropriation of trade secrets and confidential information, obtain discovery of trade secrets and confidential information of a corporate defendant in order to discover whether or not any of the corporate plaintiff's trade secrets have been appropriated and used by the corporate defendant.

In its Complaint (# 1–C), the plaintiff (hereinafter, "Microwave") alleges that it is engaged in "... the research, development, manufacture and sale of state-of-the-art microwave components and subsystems for both military and commercial applications", that the defendant through its Component Products Group (hereinafter "Sanders") "... is primarily engaged in the research, development, manufacture and sale of state-of-the-art microwave systems, products and components for both military and commercial applications", and that Microwave and Sanders "... are in direct competition with respect to the development, manufacture and sale of microwave products and components to certain customers." Between February and June, 1983, representatives of Microwave and Sanders discussed a possible acquisition of Microwave by Sanders. As part of the negotiations, Microwave furnished Sanders with documents concerning Microwave's operations and financial condition. On March 8, 1983, an attorney for Microwave, Carl R. Croce, Esquire, wrote a letter to Sanders, a copy of which is attached to the Complaint as Exhibit A. The second paragraph of the letter reads as follows:

I understand that representatives of Sanders Associates, Inc. have met with Dr. Hefni [President of Microwave] and Jerry Hermann to discuss a possible acquisition or merger. Please acknowledge your agreement to maintain the confidentiality of all confidential materials and information furnished you by MRC [Microwave] by signing and returning the enclosed copy of this letter for your files.

The letter is endorsed as "Acknowledged and Agreed to" by Sanders' Vice-President for Corporate Development.

The Complaint further alleges that various meetings were held between representatives of Microwave and Sanders from March to June, 1983 and that at these meetings, Microwave, at Sanders' request, "in good faith" disclosed to Sanders "... confidential information and material relating to [Microwave's] customers, backlog and manufacturing processes and techniques" and that Sanders' "representatives ... requested and were allowed to inspect [Microwave's] plant facilities, equipment and inventories and were furnished with copies of [Microwave's] financial records, tax returns, payroll ledgers and other financial data including a projection of future business prepared especially for Sanders at its request." Complaint, ¶ 9.

As a result of these discussions, Microwave and Sanders entered into a "Memorandum of Understanding" on June 8, 1983. A copy of the Memorandum is attached to the Complaint as Exhibit B. Paragraph 7 of the Memorandum reads, in pertinent part, as follows:

7. *Closing.* The acquisition will be completed on or before June 30, 1983.

\* \* \* \* \* \*

[Microwave] will provide [Sanders] with total and free access to all information relating to the [Microwave] BUSINESS subject to [Sanders'] agreement to main-

tain the confidentiality of such information.

\*     \*     \*     \*     \*     \*

The foregoing is merely a statement of intention subject in all respects to and the execution and delivery of a definitive Asset Purchase Agreement, and no party shall have any obligation to the other until such execution.

Paragraph 13 of the Complaint reads:

After the signing of the June 8th Agreement, [Sanders] requested and [Microwave] provided ... total and free access to all information related to [Microwave's] business for the purpose of compiling the lists and schedules identifying the tangible assets (other than inventory) to be acquired pursuant to the Agreement. [Sanders] requested and was allowed to inventory assets without restriction and, in fact, proceeded to identify assets by means of numbered stickers attached to each item of property.

On June 23, 1983, Sanders notified Microwave that it had determined not to go through with the acquisition.

Based on these allegations, Microwave seeks damages for breach of contract (Count I), unfair and deceptive acts (Count II) and misappropriation of confidential and proprietary assets (Count III).

The misappropriation claim is based on ¶ 23 of the Complaint which reads:

... [Microwave] fears and suspects that Sanders is utilizing confidential and proprietary information of [Microwave] obtained during the course of its acquisition negotiations to obtain a competitive advantage over [Microwave].

Count III reads:

34. Defendant's aforesaid acts constitute misappropriations of the confidential and proprietary assets of the plaintiff.

35. As a result of Defendant's aforesaid acts, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined, but not less than $1,000,-000.

On October 30, 1984, Microwave filed Plaintiff's Request For Production And Inspection Of Documents And Tangible Things, Pursuant To Rule 34, F.R.C.P. (# 56). The document requested Sanders to allow Dr. Hefni to inspect and copy the following:

All blueprints and samples of all

(1) products,

(2) production equipment and machinery,

(3) production methods, procedures or techniques

(4) microwave couplers,

(5) microwave power dividers,

(6) microwave matrices,

(7) waveguides,

(8) coaxial cables

of Sanders' Component Products Group which were

"developed, modified, enhanced or changed in any way since February 9, 1983 and all products presently under development by the Component Products Group."

All Sanders production machines and equipment and manufacturing methods, procedures, protocols, and/or techniques which are presently under development or which have been developed, designed, acquired, manufactured, modified, enhanced or in any way changed since February 9, 1983.

Sanders filed a response (# 63) on November 14, 1984 objecting to all requests on three grounds, the second of which reads that "... the Request calls for the disclosure of highly sensitive trade secret information relating to ongoing product development which is irrelevant to any good faith allegation of the complaint."

In considering this objection, the Court must first determine whether the requested discovery is "relevant". There is no question but that the requested discovery is "relevant" as that term is used in Rule 26(b)(1), F.R.Civ.P. The Supreme Court has discussed the definition of "relevant" as used in the Rule in the case of *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978):

The key phrase in this definition—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. See *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947). And in a footnote immediately following the citation to the *Hickman* case, the Court cited Professor Moore as follows:

"[T]he Court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." 4 J. Moore, Federal Practice, Sec. 26.56(1), p. 26–131 (2d ed. 1976).

■ Under this definition, the discovery sought is "relevant" to the claim contained in Count III of the Complaint.

■ However, when discovery of a defendant's alleged trade secrets and confidential information is sought in litigation regarding misappropriation by a defendant of a plaintiff's trade secrets or confidential information, it is not enough to analyze the requested discovery in terms of relevance. In order to protect a corporate defendant from having to reveal its trade secrets and confidential information to a competitor during discovery, a plaintiff must demonstrate that there is a factual basis for its claim. As was stated by Judge Weinfeld in the case of *Ray v. Allied Chemical Corporation*, 34 F.R.D. 456, 457 (S.D.N.Y., 1964):

... [T]he circumstance that a litigant in his complaint alleges that he disclosed confidential and secret processes to a defendant, which the latter in turn denies, does not automatically entitle the plaintiff to obtain disclosure of the alleged offending processes in aid of discovery—otherwise it would be a simple matter to obtain one's trade secret by the mere assertion of a claim. The end result of disclosure, where ultimately it develops that the asserted claim is without substance, may be so destructive of the interests of the prevailing party that

more is required than mere allegation to warrant pretrial disclosure.

In cases involving the disclosure of confidential information and/or trade secrets, the Court must strike a balance.

[T]he court must weigh on the one hand the right of the plaintiff to examine with respect to everything relevant, and to have the production for copying of documents which are relevant and for which the plaintiff has established good cause, and on the other hand, the right of the defendant to be protected ... as justice demands in his trade secrets.

*DeLong Corporation v. Lucas*, 138 F.Supp. 805, 808 (S.D.N.Y., 1956).

In striking the balance, courts have implemented various procedures, depending on the facts of a given case. In some cases, discovery of a defendant's secret processes is delayed until trial "... to meet the problem posed by the conflict between a plaintiff's right to discovery and a defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance." *Ray v. Allied Chemical Corp.*, 34 F.R.D. 456, 458 (S.D.N.Y., 1964) (footnote omitted). A delay until the plaintiff has done sufficient other discovery to resist a motion for summary judgment has been suggested by the Court of Appeals for the Seventh Circuit in the case of *Marrese v. American Academy of Orthopedic Surgeons*, 706 F.2d 1488 (7 Cir., 1983). In that case, the Court wrote:

... Rule 26(d) of the Federal Rules of Civil Procedure (sequence and timing of discovery) provides a method of accommodating the competing interests with minimal damage to either. If there is other discovery that the plaintiffs must complete in order to be able to resist a motion by the defendant for summary judgment, and thus a significant chance that the plaintiff's case will fail regardless of what the internal files that they are seeking may show, the district judge should use his power under Rule 26(d) to

require the plaintiffs to complete the other, nonsensitive discovery first.

*Id.* at 1494.

A further procedure employed is to require a plaintiff to specify in detail the trade secrets and confidential information alleged to have been misappropriated. Judge Edelstein has written that "... until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not ..." *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y., 1974).

Another procedure is for the parties to agree to the appointment of an independent expert or experts. As one commentator has written:

> ... [T]he parties may find it advantageous to agree to the use of court-appointed impartial experts in controlling the areas of discovery. In one case, with the consent of the parties, the court appointed two independent experts to inspect both parties' plants and papers and to report which aspects of plaintiff's plants were substantially similar to defendant's. The experts were also directed to identify those aspects which, although substantially similar, they considered to be in the public domain and to set forth the basis for their opinion. On the basis of such a report, the court could confine discovery to those aspects found to be substantially similar, and, if no important areas of similarity were found, the parties would be spared the considerable expense of further litigation.

J. Doyle & A.S. Joslyn, "The Role of Counsel in Litigation Involving Technically Complex Trade Secrets," 6 Boston College Industrial and Commercial L.Rev. 743, 747 (1965) (footnotes omitted).

Of course, implementing this procedure assumes "... that experts unconnected with any competitor can be found." *Id.* at 744, n. 3.

None of these procedures seem suited to the present case. The problem which plaintiff faces is that unless it receives the discovery which it seeks from the defendant, it will be unable to prove a misappropriation of trade secrets and/or confidential information. Thus, delay of discovery until trial will not solve the problem, nor does it appear that the plaintiff will be able to resist a motion for summary judgment on Count III without the requested discovery.

In response to Sanders' interrogatories, Microwave has attempted to state the trade secrets and confidential information which it claims have been misappropriated. Thus, in response to interrogatory 1(a) of Sanders' interrogatories which asked for an identification of each trade secret misappropriated by the defendant, plaintiff answered, in pertinent part:

> [Between June 8th and June 22nd, 1983] ... Sanders employees conducted a detailed and extensive physical inspection of all of the facilities at [Microwave] including the tooling and equipment used for the manufacture of [Microwave's] microwave and millimeterwave components and the prototypes, drawings and documents supporting [Microwave's] product designs. In addition, such persons asked questions and were educated as to [Microwave's] operations by [Microwave's] employees engaged in the production and testing departments. As a result, Sanders gained the necessary knowledge regarding [Microwave's] production, manufacture, fabrication and testing methods to permit Sanders to duplicate [Microwave's] microwave and millimeterwave components. The designs and methods of production, manufacture, fabrication and testing which [Microwave] considers as trade secrets (and to which Sanders had access) include those related to the following products manufactured by [Microwave]:
>
> 1. *Filters*—Absorptive and reflective filters for applications in waveguide, coaxial and stripline components.
>
> 2. *High-Power Couplers and Dividers*

3. *Special Waveguide to coaxial transitions*

4. *Matrices*—Matrices for phased array and for power combining and dividing.

5. *Transitions*—Transitions between waveguide and coaxial and stripline components.

6. *Antennas*—Feeds and multifeed structures and corrugated and high-gain antennas.

7. *High Power Terminations*—Terminations for wave-guide, coaxial and stripline components.

8. *High Power Ferrite Broadband Circulators/Isolators*

As is evident, the plaintiff has not listed any trade secrets; rather, it has listed products which it claims contain trade secrets. A list of products is perhaps helpful to the extent that the discovery possibly could be limited to documents relating to those of the defendant's products which compete with plaintiff's products. The defendant in the instant case does not oppose production of those documents and represents that it "... has already produced over 3,600 pages of its trade secret and technical data related to the only two components that directly competed with [Microwave] products during the period material to the complaint." Memorandum In Opposition, Etc. (# 77) at p. 18. This representation is not contradicted by Microwave. However, as indicated *supra*, Microwave requests discovery of a far broader range of products either in production or under development without regard to whether the products compete with those which it manufactures and sells.

Lastly, the feasibility of finding and appointing experts is unknown.

▆▆▆▆ In these circumstances, when a plaintiff cannot specify the trade secrets and/or confidential information which it claims were misappropriated, the test of whether or not such a plaintiff is entitled to the kind of broad discovery which Microwave seeks in the instant case, i.e. all documents relative to all products which Sanders has "developed, modified, enhanced or changed in any way since February 8, 1983" and "all products currently under development", is whether there is a substantial factual basis for plaintiff's claim that the defendant has misappropriated its trade secrets. This requires something more than what is required in order to file a count alleging misappropriation of trade secrets. In the instant case, it can be argued that there is a "factual basis" for Microwave's "fears and suspicions" that Sanders misappropriated its trade secrets, i.e. the "fact" that Sanders' employees were given access to the information and cancelled (with no good-faith basis for doing so) an agreement for acquisition shortly after gaining access. These circumstances and the inferences which may be drawn from them *may* be sufficient under the provisions of Rule 11, F.R.Civ.P. (as amended August 1, 1983) to support a "belief" by the plaintiff which is "well-grounded in fact" that trade secrets have been misappropriated, although one can certainly question the degree to which the belief is "well-grounded" as opposed to merely "grounded" in fact. But before a plaintiff is entitled to the type of broad discovery into a defendant's trade secrets, it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim. In my opinion, the plaintiff has failed to make such a showing in this case.

First, Microwave has had the opportunity to depose the employees of Sanders who were given access to the confidential information and/or trade secrets. It also has access to its own employees who were present when Sanders' employees were at Microwave's facilities and either witnessed the activities of Sanders' personnel at the premises and/or personally provided information to Sanders' employees. While a plaintiff is not required to accept testimony of a defendant's employees that they did not misappropriate any confidential information and/or trade secrets, it would seem

that the plaintiff, after interviewing its own employees and deposing Sanders' employees, would be able to point to some circumstances which would support an inference that Sanders' employees were interested in obtaining confidential information for purposes of misappropriation. However, Microwave is not able to point to any circumstances which add in any way to the "fear and suspicion" which it had before it commenced discovery.

Second, as indicated, Microwave has received discovery regarding Sanders' products which compete with those which Microwave produces. Yet Microwave has been unable to point to any inclusion of its trade secrets or confidential information in any of those products. It would seem that if trade secrets were misappropriated, some would be found in Sanders' products which compete with Microwave's products. But Microwave is not able to point to anything in Sanders' products with which it competes which would indicate that any trade secrets have been misappropriated.

Third, in a deposition, Jerry Hermann, now President and chief executive officer of the company which ultimately purchased Microwave after the deal with Sanders fell through, testified on November 26, 1984 that he has encountered no situation or information which would lead him to believe that Sanders was using confidential information or trade secrets obtained from Microwave. If there were a misappropriation, it seems likely that some of Sanders' products on the market in the year following would reflect the use of such secrets or confidential information.

In sum, plaintiff has not demonstrated that there is a substantial factual basis for its claims of misappropriation of trade secrets and/or confidential information.

Accordingly, it is ORDERED that Plaintiff, Microwave Research Corporation's, Motion For An Order Compelling Defendant, Sanders Associates, Inc., To Produce Documents And Things (# 67) be, and the same hereby is, DENIED.