Leibensperger, Edward P., J.
This is an alleged misappropriation of trade secrets case. The parties are biotechnology companies located in Cambridge, Massachusetts. Both companies are involved in the research, development and commercialization of therapeutics utilizing RNA interference (“RNAi”). Short interfering RNA (“siRNA") can be used to “silence” disease-causing genes using the RNAi mechanism. The parties’ factual contentions involve highly complex issues concerning molecular biology and nucleic acid chemistry.
Both Alnylam and Dicerna bid to purchase the assets, including the intellectual property, of Sirna Therapeutics, Inc., a RNAi-focuscd subsidiary of Merck & Co., Inc. Both companies signed Confidential Disclosure Agreements (“CDAs”) with Merck promising, among other things, to return, destroy and not use confidential information regarding Sima if the company’s bid proved unsuccessful. Alnylam was the successful bidder. It completed the purchase of Sima in March 2014, in exchange for an immediate payment of cash and stock worth approximately $175 million. Alnylam received from Merck in connection with the closing the assignment of Merck’s rights under the CDA with Dicerna.
In anticipation of its decision to sell Sirna, Merck terminated the employment of dozens of scientists working on RNAi. The scientists were obligated by contract not to disclose after the termination of their employment confidential information or trade secrets of Sirna or Merck. Six of the former Merck scientists became employed by Dicerna by May 2014.
Alnylam alleges that some or all of the former Merck scientists have disclosed Sirna/Merck confidential information or trade secrets, now belonging to Alnylam, to Dicerna and that Dicerna has used the information to advance its RNAi research and development. Al-nylam also alleges that Dicerna has breached the terms of the CDA it entered into with Merck. Dicerna denies the allegations.
Since the commencement of the action the parties (a) negotiated a Stipulated Protective Order governing the exchange of confidential information in discovery, (b) propounded requests for documents and interrogatories, and (c) produced certain documents but objected to producing all requested documents. Disputes have arisen regarding the proper scope and timing of discovery. The following motions are before the court: (1) Dicerna’s Motion to Compel Adequate Trade Secret Disclosure; (2) Dicerna’s Motion for Protective Order to prevent disclosure of Dicerna’s internal research and development information and Alnylam’s Cross Motion to Compel Production of Dicerna’s Scientific Development Information; (3) Alnylam’s Motion for Protective Order to prevent the deposition of its employee, Dr. Laura Sepp-Lorenzino, and Dicerna’s Cross Motion to Compel the deposition of Dr. Sepp-Lorenzino; and (4) Alnylam’s Motion for Protective Order to bar disclosure of confidential information to an expert selected by Dicerna, Dr. Nassim Usman.
1. Alnylam’s Trade Secret Disclosure
The genesis of the discovery disputes involves the adequacy of the disclosure by Alnylam of what it claims are the trade secrets taken and used by Dicerna. Alnylam concedes that in a theft of trade secrets case it is incumbent upon the plaintiff to identify the allegedly stolen trade secrets with reasonable particularity. “ ‘Reasonable particularity’ for these purposes simply means a description of the trade secrets at issue that is sufficient to put a defendant on notice of the nature of plaintiffs claims and to enable the defendant to determine the relevancy of any requested discovery.” Alnylam’s Opposition to Defendant’s Motion for Protective Order and Memorandum in Support of its Cross Motion to Compel Production of Dicerna’s Scientific Development Information, p. 11. I accept that description of a plaintiffs obligation in a trade secrets case. Such disclosure of the allegedly stolen trade secrets must come before a plaintiff is allowed to obtain discovery of a defendant’s confidential information regarding the development of the defendant’s own technology so as to prevent a plaintiff, especially a competitor as in this case, from rummaging through a defendant’s scientific files. L-3 Comm. Corp. v. Reveal Imaging Technologies, Inc., 18 Mass. L. Rptr. 512, *3 (Mass.Sup.Ct. 2004) (“Massachusetts law and law elsewhere supports such an order [to serve a statement identifying trade secrets that form the basis of a claim of trade secret misappropriation before any discovery may be had on those claims]”). Moreover, the burden of time and expense to respond to discovery propounded by the plaintiff in a trade secrets case should be circumscribed by what the plaintiff fairly and specifically claims are the stolen trade secrets. Micro *497 wave Research Corp. v. Sanders Assoc., 110 F.R.D. 669, 672 (D.Mass. 1986).
Alnylam has provided to Dicema as an attachment to an answer to an interrogatory asking Alnylam to identify the confidential information and trade secrets allegedly misappropriated a 21-page document entitled “Alnylam’s Disclosure of Trade Secret Information” (‘Trade Secret Disclosure"). The document is organized into 31 numbered paragraphs, most of which have several subparagraphs. Review of the Trade Secret Disclosure by me is hampered because the Disclosure consists of highly technical scientific information in arcane terms beyond my ken and understanding. That said, I am stmck, on the one hand, by the breadth of some of the categorical descriptions used by Alnylam to describe its allegedly stolen trade secrets and, on the other hand, the failure of Alnylam to be specific about what it claims are really the trade secrets. On perusal, Alnylam appears to contend that the entire field of RNAi belongs to it, alone.
The only scientific assistance provided to the court for evaluating the Trade Secret Disclosure is the Affidavit of David R. Liu, a Ph.D in organic chemistry and a professor of chemistry and chemical biology at Harvard University. Dr. Liu is engaged as an expert consultant by Dicerna. Dr. Liu states that it is not possible to evaluate Alnylam’s claims because “much of the information” in the Trade Secret Disclosure lacks specificity and covers a very broad expanse of general topics in many fields as to which there is a great deal of public information. Dr. Liu points out that the disclosure is not specific enough to understand the nature of Alnylam’s claims and to advise Dicerna with respect to the relevancy of discovery sought by Alnylam. With respect to Alnylam’s request to Dicerna to state why the items on the Trade Secret Disclosure do not constitute Alnylam’s trade secrets, Dr. Liu opines that “it would be impossible to provide a detailed response without greater specificity and, given the broad scope of the topics included on the List, the effort required to do so would consume thousands of hours at enormous expert expense.” Liu Aff. ¶9. Alnylam provides no affidavit or other statement of a scientist to contradict Dr. Liu. The Trade Secret Disclosure is unsigned. It is merely attached to Alnylam’s answers to interrogatories which, in turn, are signed by counsel. Given this state of the record, I am compelled to conclude, based on the scientific analysis of Dr. Liu, that Alnylam’s Trade Secret Disclosure fails specifically to identify its trade secrets and is, thus, inadequate.
That said, the question becomes how best to move this case forward. First, Alnylam is ordered to prepare and serve a revised Trade Secret Disclosure. This revised Trade Secret Disclosure shall describe “with clarity that can be understood by a lay person” the claimed trade secrets. Staffbridge, Inc. v. Gary D. Nelson Assoc., Inc., 2004 WL 1429935, *4 (Mass.Sup.Ct. 2004). While this is understandably difficult when describing complex scientific concepts, a much better attempt can be made. This must have already been contemplated by Alnylam as it elected ultimately to submit this case to a jury. Also the revised Trade Secret Disclosure should identify the claims with sufficient particularity so that the reader can understand how each claim differs from information in the public domain. United Services Auto Ass’n v. Mitek Systems, Inc., 289 F.R.D. 244, 249 (W.D.Tex. 2013); see also Dow Chemical Canada Inc. v. HRD Corp., 909 F.Sup.2d 340, 346 (D.Del. 2012) (“The identification must be particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade”). Alnylam is hereby ORDERED to serve its revised Trade Secret Disclosure by no later than May 6, 2016, after following the procedure described below.
Second, with respect to the preparation of the revised Trade Secret Disclosure, each side should designate a scientific expert to meet and confer about the revised list. Such a conference is likely to go a long way towards achieving clarity. It should be noted that such a conference is only for the purpose of Dicema understanding what trade secrets are claimed by Alnylam to have been misapprehended. The conference is not intended to resolve the issue of whether the claimed trade secrets are, in fact, protectable trade secrets.
Third, I will consider, if the parties are unable to reach agreement regarding the adequacy of Alnylam’s revised Trade Secret Disclosure, the appointment by the court of an expert. See Mass. Guide to Evidence. §706. The cost of the court-appointed expert will be split equally between the parties.
Dicerna’s Motion to Compel Adequate Trade Secret Disclosure is ALLOWED on the above-described terms.
2. Motion for Protective Order and Cross Motion to Compel
As discussed, discovery directed to Dicerna’s internal, confidential research and development should await adequate disclosure by Alnylam of the allegedly misapprehended trade secrets. As a result, Dicerna’s Motion for Protective Order is ALLOWED and Alnylam’s Cross Motion to Compel Production of Dicerna’s Scientific Development Information is DENIED.
3. Motions to Compel or to Prevent the Deposition of Dr. Laura Sepp-Lorenzino
Dr. Sepp-Lorenzino is an employee of Alnylam. It is undisputed that she has discoverable information, including about whether certain alleged trade secrets were misapprehended or, instead, were in the possession of a Dicerna employee with the consent of Alnylam. Alnylam seeks a protective order to prevent her deposition until after the completion of document discovery, including production by Dicerna of its confidential scientific information. Dicerna seeks the deposition now and it property gave notice of the deposition on January 6, 2016.
“Methods of discovery may be used in any sequence . . .” absent order of the court. Mass.R.Civ.P. 26(d). A party seeking to prevent property noticed *498 discovery bears the burden of showing “good cause.” Mass.R.Civ.P. 26(c). To satisfy that burden, Alnylam argues that a stay of Dr. Sepp-Lorenzino’s deposition “will both prevent unduly burdening this witness and most efficiently resolve this action.” Memorandum in Support of Alnylam’s Motion for Protective Order, p. 8.
First, with respect to efficient resolution of the case, I disagree with Alnylam. It appears that Dr. Sepp-Lorenzino’s deposition may contribute to abetter understanding of whether certain of the allegedly purloined documents were, in fact, freely disclosed. Early resolution of that issue may contribute to a more efficient resolution of the case. Further, Alnylam fails to articulate why production of Dicema’s confidential documents would have an effect on the scope of the deposition of Alnylam’s employee (Dr. Sepp-Lorenzino). Second, with respect to the burden on Dr. Sepp-Lorenzino, Alnylam is concerned that she may be noticed for a second deposition after document discovery has been completed. I acknowledge that as a legitimate concern because, as a general rule, witnesses should not be required to give a deposition more than once. But the concern is premature at this point. It is the next time, if ever, that Dicerna notices a deposition of Dr. Sepp-Lorenzino that a protective order may be appropriate. Consequently, Alnylam’s motion for a protective order is DENIED and Dicerna’s motion to compel the deposition of Dr. Sepp. Lorenzino is ALLOWED.
4. Motion for Protective Order (Dr. Nassim Usman)
Pursuant to the parties’ Stipulated Protective Order (entered by the court), Dicerna disclosed to Alnylam that it intended to engage Dr. Nassim Usman as an expert consultant to whom Dicerna would disclose confidential and highly confidential documents produced by Al-nylam. The disclosure included Dr. Usman’s biographical materials and a signed acknowledgment by Dr. Usman to the effect that he agreed and affirmed “not [to] disclose or use any documents, deposition testimony, or other information ... for any purpose whatsoever, including business, competitive, or commercial purposes, other than the prosecution or defense of this litigation.” Alnylam objects to disclosure of confidential information to Dr. Usman and, pursuant to the Order, moves for a protective order preventing such disclosure. If granted, Dicerna would, in essence, be prevented from engaging Dr. Usman as an expert.
Alnylam points to the fact that Dr. Usman is the CEO of Catalyst Biosciences, a competitor to Alnylam in certain fields. Alnylam argues that disclosure of confidential information to Dr. Usman will pose a risk of improper use of the information, inadvertant or otherwise. In response, Dicerna argues, and supports with an Affidavit of Dr. Usman, that Catalyst does not use the siRNA technology utilized by Alnylam. Catalyst’s therapies for hemophilia and anti-complement programs are based upon an entirely different technology—proteases. There is no scientific overlap between the technologies. Accordingly, scientific confidential information regarding RNAi and siRNA (subject areas with which Dr. Usman is familiar from his background and prior employment) is of no use to Catalyst and disclosure to Dr. Usman does not present a competitive risk. Al-nylam presents no evidence to dispute that conclusion.
Alnylam argues that there is still a risk to it by disclosure of confidential documents to Dr. Usman concerning the business prospects of Alnylam’s competitive products such as market evaluations, regulatory strategy, product plans, financial investments and the like. Dicerna says that it has no intention to disclose such business documents from Alnylam to Dr. Usman, assuming any such documents are produced. Instead, Dr. Usruan will be limited to receiving documents concerning RNAi and siRNA technology and his entire focus will be limited to what part of that technology was in the public domain as opposed to what may constitute a trade secret.[1]
Alnylam fails to carry its burden of showing unfair or undue risk to it of disclosure of confidential scientific information to Dr. Usman, who has sworn not to use the information inappropriately. Thus, Alnylam’s motion for protective order is DENIED and Dicerna’s motion to compel is ALLOWED, upon the following conditions. Before disclosing any confidential information from Al-nylam to Dr. Usman, Dicerna shall inform Alnylam by reference to Bates-numbered pages the documents it intends to disclose. Within ten (10) days of receiving such notice, Alnylam may serve an objection to disclosure of specifically identified documents. The parties shall then confer to attempt to resolve any dispute. Absent resolution, Alnylam may serve a motion for a protective order within ten (10) days after the date of its initial service of an objection. Dicerna shall not disclose contested documents to Dr. Usman until after resolution by agreement or order of the court.
ORDERS
The pending discovery motions are resolved by the Orders as described above. The tracking order for the close of discovery is hereby extended to September 30, 2016. The parties are hereby ORDERED to confer by no later than May 13, 2016, for the purposes of submitting a Discovery Plan along the lines of what is described in Fed.RCiv.P. 26(1) (2) and (3). The Discovery Plan shall be filed with the court, with a copy to the undersigned, by no later than May 18, 2016. Further, the court adopts the presumptive limits on discovery events as described in the Local Rules of the United States District Court, District of Massachusetts in L.R. 26.1(c), subject to further discovery as allowed under L.R 26.2(b). Depositions shall be limited as described in Fed.RCiv.P. 30(d)(1), subject to further order of the court.

 Dr. Usman is, allegedly, uniquely qualified to provide expert opinion on these issues as he was the Chief Scientific Officer and Chief Operating Officer of siRNA until 2005.