SUPERIOR COURT 
 
 ZEMCAR INC. d/b/a GRIP MOBILITY CO. v. UBER TECHNOLOGIES, INC.

 
 Docket:
 2484CV01525-BLS2
 
 
 Dates:
 October 20, 2025
 
 
 Present:
 Debra Squries-Lee
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON (1) GRIP MOBILITY CO.’S MOTION TO COMPEL UBER TECHNOLOGIES, INC. TO PRODUCE TRADE SECRET DISCOVERY AND (2) DEFENDANT UBER TECHNOLOGIES, INC.’S MOTION FOR PROTECTIVE ORDER STAYING TRADE SECRET DISCOVERY
 
 

             Two discovery motions are pending before me – one to compel and one to stay trade secret discovery. A decision on both requires me to evaluate the adequacy of the trade secret disclosure Zemcar, Inc. d/b/a Grip Mobility Co. (Grip) provided to the defendant, Uber Technologies, Inc. (Uber). Neither party has provided me with analysis by an expert regarding the sufficiency of Grip’s trade secret disclosure. I have instead analyzed the trade secret disclosure with reference to the allegations in the Complaint, the arguments in the competing motions, and the law governing such disclosures. After hearing and review, Grip Mobility Co.’s Motion to Compel Uber Technologies, Inc. to Produce Trade Secret Discovery is DENIED. Defendant Uber Technologies, Inc.’s Motion for Protective Order Staying Trade Secret Discovery is ALLOWED.
DISCUSSION
            Because this case involves allegations of trade secret misappropriation, Grip must provide what is colloquially called a “trade secret list.” The Massachusetts Uniform Trade Secret Act provides:
 
                                                            -1-
 
In an action under sections 42 to 42G, inclusive, in alleging trade secrets misappropriation a party must state with reasonable particularity the circumstances thereof, including the nature of the trade secrets and the basis for their protection. Before commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.
G. L. c. 93, § 42D(b) (emphasis added). This requirement comports with the common law obligation to provide a trade secret list in advance of discovery in a case involving alleged trade secret misappropriation. See Alnylam Pharms., Inc. v. Dicerna Pharms., Inc., No. MICV20154126, 2016 WL 4063565, at *2 (Mass. Super. Apr. 6, 2016) (Leibensperger, J.) (“[I]n a theft of trade secrets case it is incumbent upon the plaintiff to identify the allegedly stolen trade secrets with reasonable particularity.”)
            “Such disclosure of the allegedly stolen trade secrets must come before a plaintiff is allowed to obtain discovery of a defendant’s confidential information regarding the development of the defendant’s own technology so as to prevent a plaintiff, especially a competitor as in this case, from rummaging through a defendant’s scientific files.” Id., (emphasis in original), citing L-3 Comm. Corp. v. Reveal Imaging Tech., Inc., No. 035810BLS, 2004 WL 2915743, at *3 (Mass. Super. Dec. 2, 2004) (Van Gestel, J.) (“Massachusetts law and law elsewhere supports such an order [to serve a statement identifying trade secrets that form the basis of a claim of trade secret misappropriation before any discovery may be had on those claims]”). The disclosure of such a list prior to discovery also circumscribes the defendant’s burden of responding to discovery to “what the plaintiff fairly and specifically claims are the stolen trade secrets.” Alnylam Pharms, 2016 WL 4063565, at *2, citing Microwave Research Corp. v. Sanders Assoc., 110 F.R.D. 669, 672 (D. Mass. 1986).
 
                                                            -2-
 
            A trade secret list should be sufficiently clear that it can be understood by a lay person. See Staffbridge, Inc. v. Gary D. Nelson Assoc., Inc., No. 024912BLS, 2004 WL 1429935, *4 (Mass. Super. June 11, 2004) (Van Gestel, J.). On the other hand, it must also “identify the claims with sufficient particularity so that the reader can understand how each claim differs from information in the public domain.” Alnylam Pharms., 2016 WL at *3, citing United Servs. Auto Ass’n v. Mitek Systems, Inc., 289 F .R.D. 244,249 (W.D. Tex. 2013); Dow Chemical Canada Inc. v. HRD Corp., 909 F. Supp. 2d 340, 346 (D. Del. 2012) ( “The identification must be particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.”).
            I have carefully reviewed the trade secret list here. I am not persuaded it is entirely sufficient. I note that the Complaint in this case identified the trade secrets at issue as including technical specifications, test results, data compilations, engineering techniques, testing and analysis of Grip’s software solution in Android, iOS, and web technologies, configurable video parameters, optimized Android Package Kits (APKs) including “executable files comprising the compiled code of Grip’s software application written for Android, including code related to many of Grip’s core capabilities and safety features,” and technical information about encryption and audio-visual encodings and broadcasting.
            Grip’s trade secret list, however, mainly describes the functionality of the two Grip apps at issue. Except for in one limited aspect, the list does not include, for example the code underlying Grip’s software application or the technical specifications, test results, data compilations, engineering techniques, etc. described in the Complaint. The definition of a trade secret is broad. Because a trade secret can include “a formula, pattern, compilation, program, device, method, technique, process, business strategy,
 
                                                            -3-
 
customer list, invention, or scientific, technical, financial or customer data,” G. L. c. 93, § 42, Grip must identify what specific aspects of its confidential applications it alleges constitute its trade secrets. This is particularly true where Uber’s defense is that it created its own application without using or reference to Grip’s technology. Here, while Grip alleges that it provided its proprietary applications to Uber for use in their two-year pilot program, it has not clearly identified and disclosed the underlying technical aspects of those apps, or any other features, that constitute its trade secrets.
            Although I am sympathetic to the argument that Uber knows precisely what Grip sent it – the parties worked together for two years after all – the purpose of the trade secret list is for this Court to guide discovery and the finder of fact to determine misappropriation. The list provided is not sufficient to determine the parameters of discovery. Certainly, Grip does not need to prove its trade secrets are in fact trade secrets prior to discovery. See Adimab, LLC v. Linkedup Bioscience, Inc., No. 2084CV00843-BLS2, 2022 WL 16839215, at *1 (Mass. Super. June 08, 2022) (Salinger, J.). But Grip must provide a more fulsome and detailed trade secret list before Uber will be ordered to respond to trade secret discovery. Grip must provide a trade secret list with sufficient information that all parties and the Court are able to discern with specificity what the trade secrets at issue are and to bind Grip in connection with its claim.
ORDER
            Wherefore, Grip Mobility’s Motion to Compel Uber Technologies, Inc. to Produce Trade Secret Discovery is DENIED.[1] Defendant Uber Technologies, Inc.’s Motion for Protective Order Staying Trade Secret Discovery is ALLOWED. Grip is
 
--------------------------------------------
 
[1] As stated at the hearing on this matter, this Order does not affect Uber’s obligation to
provide non trade secret discovery.
 
                                                            -4-
 
ordered to provide its revised trade secret list within thirty days and understand and expect that it will be bound by that supplemental disclosure.
/s/Debra Squries-Lee           
Debra A. Squires-Lee
October 20, 2025
Justice of the Superior Court