**DYNAMIC MICROPROCESSOR ASSOCIATES, Plaintiff(s),**

v.

**EKD COMPUTER SALES, et al., Defendant(s).**

No. CV 92–2787 (FB).

United States District Court, E.D. New York.

Feb. 2, 1996.

Kathryn J. Fritz, Fenwick & West, Palo Alto, CA, for plaintiffs.

John T. Catterson, Reynolds, Caronia & Gianelli, Hauppauge, NY, for defendants.

## ORDER

BOYLE, United States Magistrate Judge.

By order dated November 9, 1995 discovery was certified as complete, however, the defendants, EKD Computer Sales & Supplies Corp. ("EKD") and Thomas Green ("Green"), were granted permission to proceed by formal motion to compel production of the source code relating to pcAnywhere, a software program that is the subject of this action.

### 1. BACKGROUND AND PLEADINGS

The computer software programs pcAnywhere III and pcAnywhere IV are the subject matter of this action brought in June 1992 by the plaintiff, Dynamic Microprocessor Associates, Inc. ("Dynamic") based on claims (among others) of copyright infringement, violation of the Lanham Act, and breach of a licensing agreement. Dynamic seeks a permanent injunction and damages based on EKD's alleged unauthorized manufacture and sale of Dynamic's software program, pcAnywhere III.

The district court (Wexler, J.) issued a preliminary injunction barring EKD from

manufacturing and selling pcAnywhere III pending the trial of this action.

In the Third Amended Answer the defendants, EKD and Green, in addition to denying the essential allegations of the complaint, among other defenses, assert that the licensing agreement provided EKD with the exclusive right to manufacture and sublease pcAnywhere III (Third Affirmative Defense) and that Dynamic wrongfully terminated the agreement by falsely claiming that EKD was in default of its royalty obligations. As a Ninth Affirmative Defense, EKD and Green maintain that the alleged copyright is based on a "wholly functional computer program in which there are no copyrightable elements" and that the alleged copyright is void. Third Amended Answer paras. 22 to 24, annexed to defendants' moving papers at Exhibit 13 p. 10.

As a counterclaim and Third-party complaint EKD requests an accounting of profits and declaratory judgment (28 U.S.C. § 2201) relating to sales of pcAnywhere III and IV, EKD alleges that it had a wrongfully terminated licensing agreement for pcAnywhere III which is "substantially the same program (with a "minor upgrade") as pcAnywhere IV and therefore within the purview of the licensing agreement which existed between the parties. Seventh Amended Claim, paras. 72–79, pp. 27 and 28, annexed to EKD's moving papers at Ex. 13.

### 2. EKD'S REQUESTS FOR PRODUCTION OF THE SOURCE CODES

EKD has made repeated requests during this litigation for production of the source codes for pcAnywhere III and IV, going back to March 10, 1993. Dynamic has continually opposed production.

A protective order was entered, on consent, on June 22, 1993 (Wexler, *J.*). Pursu-

ant to that agreement the parties have produced a substantial volume of documents. The sole remaining issue is production of the source code [1] which plaintiff vehemently opposes on the ground of its high degree of confidentiality.

EKD's present application is based in part on the joint affidavit, dated October 15, 1993 [2], of independent computer software experts (Gerard Gress and Kenneth McKillop) retained by EKD for purposes of this litigation. The affidavit is an expert opinion, requested by EKD, on the following issues which are relevant to the motion to compel:

1) Is "Version 3 of pcAnywhere wholly functional? That is, is its code determined by the job it has to do and therefore not copyrightable because it lacks originality?" and

2) Is "Version 4 of pcAnywhere substantially the same as Version 3?"

Affidavit of Messrs. Gress and McKillop, annexed to EKD's moving papers at Exhibit 3 at para. 3.

The joint affidavit notes at para. 4 that the affidavit was prepared without access to the complete source code. Dynamic maintained that the questions could be answered based on "inspection of the release versions of the programs and their files." See para. 4, affidavit of Messrs. Gress and McKillop. The experts' affidavit sets forth, in detail, why the questions cannot be answered without examination of the full source code, and addresses the argument that Dynamic had raised that production was not necessary. The affidavit in relevant part states:

b) Source Code

The source of a program is what the developer worked with—it is comparable to the manuscript of a book or the score of a piece of music. However, while a musician with perfect pitch could listen

---

1. The plaintiff in 1993 produced, pursuant to the terms of the protective order, twenty (20) pages to the source code for pcAnywhere III which are on file with the Copyright Office, as a representative source code sample which Dynamic had filed to obtain the copyright registration to pcAnywhere III. See Declaration of Kathryn J. Fritz, Esq., in Opposition to EKD's Motion to Compel, dated December 21, 1995 at para. 12.

2. This was originally submitted in support of a prior application in which the court did not address the merits. The application was denied without prejudice to renew pending a decision on plaintiff's then-pending motion for judgment on the pleadings. Plaintiff subsequently withdrew its motion, following defendants' submission of an amended answer.

to a piece of music and write down the exact same score, we cannot look at the executable of a program or its user interface and reconstruct the source code. Often, a considerable amount of functionality is not obvious from the interface and information in the source has been lost or hidden in the executable.

c) Why we cannot answer questions without source code:

DMA has argued that we can determine pcAnywhere Version 3's functionality from its interface and compare its functionality with that of Version 4 by comparing interfaces. However, the nature of a remote access program is that it disappears into the background when performing its function. The interface of the program is purely for setting its configuration and starting operation. Once operating, the program has no visible interface. The purpose of the program is to connect the screens and keyboards of a host and remote. Since all remote access programs have the same result when operated, we cannot tell them apart by watching them operate.

The apparent differences in the configuration user interfaces are actually quite superficial. The interface of Version 3 has simply been rearranged in Version 4. The function of the program remains identical regardless of superficial changes. Most of the apparent difference between the two interfaces actually lies in the third-party interface code used in Version 4.

DMA has also argued that the differences in file sizes and numbers between Versions 3 and 4 make them obviously different. Version 4 has fewer executables and these files are much larger than in Version 3. However, these differences may not be meaningful. The change in the number of executables could have been achieved simply by moving around pieces of source code and recompiling the program. The change in the size of the executables may be entirely due to the third-party interface code used. Version 4 is based on a third-party interface library not used in

Version 3. It is fairly common to find third-party interface libraries doubling or tripling the size of an executable program.

The change in the number of executables and in their size may not reflect any significant change in the function of the program. It is still possible that the underlying function and even the source code are identical in both versions. We cannot decide the matter without access to the source code.

6. Conclusion

We need the original source code for Versions 3 and 4 of pcAnywhere in order to render a professional opinion on the issues posed to us. Without the source, we can only speculate and the facts cannot be known with any certainty. In addition, since DMA (Dynamic) and any experts it engages will obviously have access to the source code, we would be placed at a considerable and unfair disadvantage in evaluating any opinions tendered by them.

Affidavit of Messrs. Gress and McKillop, dated October 15, 1993, annexed to EKD's moving papers at Exhibit 3, para. 5a–6.

## 3. *DISCUSSION*

### A. *Relevancy*

■ The joint affidavit of Messrs. Gress and McKillop responded to the plaintiff's position that EKD had not made an adequate showing of need. See Opposing Declaration of Kathryn J. Fritz, Esq. at paras. 15–22.

The court notes that during the twenty-seven months since receipt of the affidavit from EKD's experts, describing the basis for their need to examine the source code, the plaintiff has never disputed the defendants' experts' statements by an independent computer expert of their own. Instead, plaintiff has relied on correspondence by its counsel (see two paragraph letter dated October 29, 1993 by Kathryn J. Fritz, Esq. annexed at Exhibit H to Dynamic's opposing papers) and on the affidavits of Stephen Hersh, a software developer employed by Dynamic, and Derek Witte, an attorney and officer of Dynamic, and the third-party defendant, Dy-

namic Microprocessor Associates, Inc., and who additionally serves as General Counsel to Symantec, another third-party defendant herein. These persons are undoubtedly knowledgeable in the computer field and profess a "familiarity with the practices of software companies," Declaration of Derek Witte, dated December 19, 1995, however, they do not succeed in rebutting the need for the source code, on which EKD's experts have opined.

Ironically, the affidavit of Mr. Hersh, the software developer of pcAnywhere III and IV, crystalizes the disability under which EKD is laboring without access to the source code. Mr. Hersh's declaration opines on the very issues of functionality and similarity which are critical to the prosecution and defense of claims relating to copyrightability and breach of contract. This affidavit crystalizes the substantial disadvantage that EKD will continue to work under in this litigation, if it is unable to adequately investigate and counter Dynamics' claims through its own experts.

■ The areas of dispute herein are ones where the court clearly recognizes the value of assistance by experts. *Computer Associates Intern., Inc. v. Altai, Inc.*, 775 F.Supp. 544, 549 (E.D.N.Y.1991) (Pratt, *J.*),[3] *aff'd in part and vacated and remanded in part*, 982 F.2d 693 (2d Cir.1992). Indeed, the use of experts is virtually essential to the trier of the facts in examining and evaluating the structural parts of a computer program, *Computer Associates, supra*, 982 F.2d at 714–15, of which the source code is a fundamental component.

Plaintiff's counsel has acknowledged in its moving papers (see opposing declaration of Kathryn J. Fritz, Esq. dated December 21, 1995 at para. 26) that the dispositive motions to be filed before Judge Block will not be limited to judgment on the pleadings, but instead, will also seek relief in the form of summary judgment pursuant to Rule 56, Fed.R.Civ.P.

■ The defendants are entitled to any relevant non-privileged evidence, Rule 26(b)(1), Fed.R.Civ.P., to defend against plaintiff's causes related to copyright infringement and to substantiate their asserted affirmative defense that the programs involved here are functional and, therefore, not copyrightable. *See e.g., Lotus Development Corp. v. Borland International Inc.*, 49 F.3d 807 (1st Cir.1995), *aff'd* —— U.S. ——, 116 S.Ct. 804, 133 L.Ed.2d 610 (Mem.) (decided January 16, 1996, affirming, without opinion, by an equally divided court).

■ Similarly, the source code is relevant and non-privileged evidence with respect to EKD's counterclaim and third-party complaint seeking an accounting for profits and declaratory judgment relating to pcAnywhere IV which defendants allege is substantially similar to pcAnywhere III for which it held a valid licensing agreement.

EKD's reliance on *Bell Atlantic Business Systems Services, Inc. v. Hitachi Data Systems Corp.*, 1995 WL 13115, 1995 U.S.Dist. LEXIS 265 decided January 13, 1995 (S.D.N.Y.) (Knapp, *J.*) is misplaced. The defendant there, Hitachi Data Systems Corp. ("Hitachi") asserted a counterclaim that the plaintiff, Bell Atlantic Business Systems Services, Inc. ("Bell") infringed the copyright on Hitachi's INLINE microprogram. A defense to this counterclaim, asserted by Bell, was the claim that Hitachi's program had been illegally obtained from International Business Machines Corp. ("IBM") and accordingly Hitachi's copyright claim lacks the essential element of originality which is a pre-requisite for copyright infringement. *Ibid.* In an effort to establish its claim Bell moved to compel the production of the source code from IBM, pursuant to a third party subpoena issued under Rule 45 Fed.R.Civ.P. Although the district court was clearly concerned with protecting the highly sensitive nature of the information sought, Bell's motion to compel was denied not for that reason, but because Bell had failed to show that Hitachi ever had access to the program. Accordingly, the district court concluded that Bell had failed to establish that the documents were relevant to the litigation. For the reasons stated above, EKD has clearly

---

**3.** Circuit judge sitting by designation.

established the relevance of the source codes to the issues herein.

■ The source code constitutes a trade secret, *see*, *Softel Inc. v. Dragon Medical & Scientific Communications, Ltd.*, 891 F.Supp. 935 (S.D.N.Y.1995); *Control Data Systems, Inc. v. Infoware, Inc.*, 903 F.Supp. 1316 (D.Minn.1995). As such, the source codes are clearly subject to the terms and conditions of a protective order issued pursuant to Rule 26(c), Fed.R.Civ.P. *See e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992).

■ The conditions under which discovery may take place and the protective conditions imposed depend on the facts of the particular case.[4] *Ray v. Allied Chemical Corp.*, 34 F.R.D. 456, 457 (S.D.N.Y.1964) (Weinfeld, *J.*); *Microwave Research Corp. v. Sanders, Associates*, 110 F.R.D. 669, 672 (D.Mass. 1986) (Collings, *M.J.*).

Accordingly, pursuant to Rule 26(c), the court directs the plaintiff to produce the source codes for pcAnywhere III and IV subject to the following conditions:

1. The source codes shall be produced pursuant to the terms and conditions set forth in the protective order, on consent, dated June 22, 1993 (Wexler, *J.*) (Annexed as Exhibit 1 to defendants' moving papers).

2. Pursuant to the terms of the order Dynamic shall be afforded an opportunity to review the background of EKD's expert and to make an objection and obtain a ruling from the court pursuant to section 2(d) and 3 of the Consent Order.

3. The source code shall be considered "CONFIDENTIAL: ATTORNEYS' EYES ONLY" pursuant to section 2 of the Consent Order, dated June 22, 1993; provided further however, that the source code may only be made available to defendants' designated expert(s) and attorneys representing the defendants.

4. The parties are requested to agree on whether the source codes should be turned over in a single written copy or in electronic form. In the absence of agreement, either party may file a motion addressed to this issue. There shall be no copies made of the source codes produced, nor shall they be otherwise duplicated in whole or in part. At the end of this litigation the source codes shall be returned to Dynamic together with an affidavit required by the terms of the protective order.

5. Any notes or other writings by EKD's experts arising from their examination of the source codes, shall be returned at the end of the litigation and an affidavit so attesting shall be provided to Dynamic at such time.

6. The written report by EKD's expert(s) shall be held and produced under the same conditions as set forth at three (3) above, and no more than two copies (in addition to the original) of such report shall be made. One copy shall be made available to Dynamic and one copy to EKD and its counsel.

7. EKD is directed to maintain a log of all authorized personnel who examine the source codes, and the times and dates of such inspection.

8. Any motion authorized pursuant to the terms of the protective order, dated June 22, 1993, or the within order, shall be filed on or before February 23, 1996. The parties are urged however, to make every effort to resolve such issues without court intervention.

SO ORDERED.

Dated: Uniondale, New York

February 2, 1996

---

4. In the *Ray* case, in the exercise of his discretion, the district court deferred discovery of certain secret processes to the trial judge who "would be in a better position to evaluate plaintiff's claim." That option is not available here in light of the motion for summary judgment and judgment on the pleadings which both sides anticipate making to the district court.